**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Johnathan Ian Burns, | No. CV-21-1173-PHX-SPL |
| Petitioner, | DEATH PENALTY CASE |
| v. | ORDER |
| David Shinn, et al., | |
| Respondents. | |

Before the Court is Petitioner Johnathan Ian Burns's motion to have the Court prospectively equitably toll the statute of limitations governing his habeas petition for 90 days (Doc. 16 at 1–10), *see* Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2244(d)(1)(A), or, alternatively, modify the briefing schedule so that Burns may file an amended petition within 90 days after the un-tolled statute of limitations runs (*id.* at 2, 7–8, 10; Doc. 10 at 2). The motion is fully briefed. (Docs. 19, 21.) For the following reasons, the Court denies Burns's tolling request and grants his modification request.

**A.   Background**

The Court has ordered Burns to petition for a writ of habeas corpus by June 20, 2022. (Doc. 10.) Both parties agree that this deadline is when the one-year statute of limitations under the AEDPA will run. (Doc. 9 at 1.) Burns now asks the Court to either prospectively equitably toll the deadline for 90 days, up through September 18, 2022, or let him file an amended petition within 90 days of the June 20, 2022, deadline. (Doc. 16.)

Respondents oppose his tolling request but do not oppose his modification request. (Doc. 19.) In doing so, Respondents seek to "reserve the right to challenge any claim-specific" equitable-tolling requests as well as any "untimely new claims and arguments that do not relate back to claims and arguments in the initial, timely petition." (*Id*. at 5.)

**B.     Analysis**

The Court may equitably toll the AEDPA's statute of limitations if a petitioner shows "'(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented [the petition's] timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). This test is "highly fact-dependent." *Whalem/Hunt v. Early*, 233 F.3d 1146, 1148 (9th Cir. 2000).

Burns argues that the Court can grant such tolling under *Calderon v. U.S. Dist. Court for the Cent. Dist. of California* (*Beeler*), 128 F.3d 1283, 1289 (9th Cir. 1997), *overruled on other grounds by* 163 F.3d 530 (9th Cir. 1998) (en banc), and asserts that he has been diligently pursuing his rights but that an extraordinary circumstance, the COVID-19 pandemic, has stood in his way and will prevent him from timely filing his petition (Doc. 16 at 2–7). Specifically, he avows that his defense team could not travel to interview witnesses for three months, from December 2021 through February 2022, due to the pandemic. (*Id*. at 3.) Although he avows that his defense team has "been contending" with the pandemic since counsel's appointment, he seeks relief from those three months. (*Id*. at 2, 7; Doc. 21 at 5.)

Citing the declarations of an attorney on the team (*see* Doc. 16-1; Doc. 21-1), Burns states that upon counsel's appointment, the team (based in California) traveled to Arizona many times in the summer and fall of 2021 (*id*. at 4; Doc. 16 at 3). But due to a spike in COVID-19 cases, his team could not travel to interview witnesses from December 2021 through February 2022. (Doc. 16 at 3; Doc. 16-1 at 6; Doc. 21 at 5.) Still, in those months, the team kept requesting, amassing, and reading various records; retaining and consulting with experts; speaking with Burns on the phone; spotting issues to investigate; and

researching claims. (Doc. 16 at 3–4, 7; Doc. 16-1 at 6–7.) At the end of February 2022, as COVID-19 cases declined, the team again felt safe traveling and thus resumed doing so. (Doc. 16 at 4; Doc. 16-1 at 6.) They traveled to Arizona and other states many times to interview witnesses. (Doc. 16 at 4; Doc. 16-1 at 6–8.)

Burns avers that his team has "identified over 100 witnesses" (former members of Burns's defense team, among others) who live in and outside Arizona whom they need to interview. (Doc. 16 at 4; Doc. 16-1 at 7–8.) They have retained experts and have garnered and given the experts relevant records. (Doc. 16 at 4; Doc. 16-1 at 9.) Also, the Court has granted Burns's stipulation for an order permitting an expert to visit Burns in person. (Doc. 16 at 4; Doc. 16-1 at 9; Docs. 18 and 20.) The expert will contact Burns on May 13, 2022. (Doc. 20 at 2.) Burns's attorney also described the team's efforts to retrieve pertinent documents and declared that they have begun drafting claims in a habeas petition. (Doc. 16-1; Doc. 21-1.) In sum, Burns argues that "[d]espite [their] best efforts," his team will be unable to interview all of their identified witnesses, complete their "necessary investigation," or "file a complete petition by" June 20, 2022. (Doc. 16 at 1, 4, 7; Doc. 21 at 5.)

Burns points out that the Court has found the pandemic to be an extraordinary circumstance that has stood in the way of timely filed petitions. *See*, *e.g.*, *Payne v. Shinn*, No. CV-20-0459-TUC-JAS, 2021 WL 3511136, at *3 (D. Ariz. Aug. 10, 2021) (explaining that the pandemic has blocked counsel from gaining records and interviewing relevant witnesses). Yet Respondents assert that even assuming that the pandemic is such a circumstance, until Burns files his petition, he cannot fully show reasonable diligence or that the pandemic prevented him from timely filing the petition. (Doc. 19 at 2–5.)

Equitable tolling is generally applied retrospectively, *e.g.*, *Carter v. Bradshaw*, 644 F.3d 329, 335 (6th Cir. 2011) (citing cases), *reversed on a different ground in Ryan v. Gonzales*, 568 U.S. 57 (2013), though the Supreme Court has not passed on whether it may apply such tolling before the filing of the petition.

On the one hand, some courts have held that they lack jurisdiction to consider the petition's timeliness until it is filed. *See*, *e.g.*, *United States v. McFarland*, 125 Fed. App'x 573, at *1 (5th Cir. Apr. 6, 2005) (finding opinion on timeliness advisory, as no case or controversy will arise until petition is filed); *see also Archanian v. Gittere*, No. 319-CCV-00177APG-CLB, 2019 WL 6499113, at *2–3 (D. Nev. Dec. 3, 2019) (denying motion for equitable tolling as premature without prejudice when the motion is in response to respondents' limitations defense); *Knutson v. McNurlin*, No. CV 15-2807 (DSD/BRT), 2015 WL 9224180, at *1 (D. Minn. Nov. 23, 2015) *report and recommendation adopted in* 2015 WL 9165885 (D. Minn. Dec. 16, 2015) (denying motion for equitable tolling as premature because, until the petitioner files the petition, the court "cannot determine whether he has diligently pursued his rights throughout the entire period preceding the filing of his petition and was prevented from timely filing due to extraordinary circumstances beyond his control"); *Gray v. Quarterman*, No. 3:08-CV-2068-D, 2008 WL 5385010, at *1 (N.D. Tex. Dec. 23, 2008) (stating that "[f]ederal courts do not sit to decide hypothetical issues or to give advisory opinions about issues as to which there are not adverse parties before [them]") (second alteration in original) (internal quotations omitted); *but see Hargrove v. Brigano*, 300 F.3d 717, 720–21 (6th Cir. 2002) (affirming district court's use of prospective equitable tolling in § 2254 cases when tolling achieved the same result as a stay).

On the other hand, prospective equitable tolling has occurred in this Circuit. *See*, *e.g.*, *Beeler*, 128 F.3d at 1289 (upholding tolling due to a late change in counsel); *Calderon v. U.S. Dist. Court for the Cent. Dist. of California* (*Kelly V*), 163 F.3d 530, 541 (9th Cir. 1998), *abrogated on other grounds by Woodford v. Garceau*, 538 U.S. 202 (2003) (holding that a prisoner's incompetence justifies equitable tolling "until a reasonable period after the district court makes a competency determination"); *Williams v. Chappell*, No. 1:12-CV-01344 LJO, 2013 WL 3863942, at *4–5 (E.D. Cal. July 24, 2013) (citing cases granting such tolling).

- 4 -

Since *Beeler*, prospective equitable tolling has been used to extend the limitations period in a "stop-clock" fashion, for the duration of time between a capital habeas petitioner's request for the appointment of counsel and the date counsel is appointed.[1] *See Bunyard v. Davis*, No. 2:15-cv-01790 WBS AC DP, 2016 WL 128429, at *2–3 n.3 (E.D. Cal. Jan. 12, 2016) ( "Pre-petition equitable tolling in capital cases is widely accepted in this circuit."); *Williams*, 2013 WL 3863942, at *5 ("The Court is well aware that granting equitable tolling during the time capital petitioners await appointment of counsel is widely practiced and sanctioned by the appellate courts.").

Burns relies on *Beeler* but concedes that this Court has denied prospective equitable tolling since the Ninth Circuit's more recent holding in *Smith v. Davis*, 953 F.3d 582, 599 (9th Cir. 2020), *cert. denied in* No. 20-5366, 2020 WL 6829092 (U.S. Nov. 23, 2020). (Doc. 16 at 5–6.) *See*, *e.g.*, *Payne*, 2021 WL 3511136, at *3–7.

*Smith* calls into question Burns's reliance on *Beeler* and the practice of prospective tolling. Smith petitioned for a writ of habeas corpus more than two months after the AEDPA's statute of limitations had run. *Smith*, 953 F.3d at 585–86. He argued that he should receive equitable tolling because his counsel had not informed him of his unsuccessful state-court appeal and had not given him the state-court record. *Id.* After Smith learned of his unsuccessful appeal and obtained the record, he still had 10 months to file the petition before the statute of limitations ran. *Id*. But he did not do so until 66 days after it had run. *Id.*

The Ninth Circuit held that Smith was not entitled to equitable tolling. *Id*. at 602. It held that a petitioner "must show that he has been reasonably diligent in pursuing his rights not only while an impediment to filing caused by an extraordinary circumstance existed,

---

[1] "Stop-clock" tolling is the granting of a motion for equitable tolling to extend the limitations period for the exact duration of the impediment. For instance, if counsel is not appointed for 60 days after the initiation of habeas proceedings, a court that performs stop-clock tolling would extend the limitations period for 60 days regardless of any showing of diligence after counsel is appointed or counsel's ability to nonetheless file a timely petition in the absence of tolling.

but before and after as well, *up to the time of filing his claim in federal court.*" *Id.* at 598–99 (emphasis added). Applying this framework, the court found that Smith had not been diligent between the time he obtained his records and the time he filed his petition. *Id.* at 601.

The Ninth Circuit explicitly rejected the argument raised by Smith that Congress established a one-year-statute of limitations with the intent to provide petitioners with 365 impediment-free days to draft and file a petition. *Id.* at 591–92; *accord Kayer v. Schriro*, No. CR-07-2120-PHX-DGC, 2007 WL 4150213, at *2–3 (D. Ariz. Nov. 19, 2007) (rejecting argument that AEDPA provides petitioners with a full year to prepare a habeas petition and finding petitioner's request for equitable tolling filed before the expiration of the statute of limitations premature).

This Court assumes that Burns has been reasonably diligent in pursuing his rights since the appointment of counsel and that the pandemic has been an extraordinary circumstance that stood in the way of timely filing his petition for virtually three months. Even so—in accordance with *Smith*—the Court cannot assess Burns's diligence up to the time of filing the petition because he has not filed it. *See* 953 F.3d at 591–93 n.3 (second alteration added) (noting that the language, "*has been* pursuing his rights diligently" indicates that "a petitioner [needs] to show his diligence continued up through the point of filing his habeas petition in federal court" and that this requirement protects the rights of all parties).

Burns nonetheless points out that two districts in our Circuit (the Eastern District of California and the District of Nevada) have rejected the notion that *Smith* bars prospective equitable tolling and thus have applied such tolling based on the COVID-19 pandemic. (Doc. 16 at 6–7.)

In *Brown v. Davis*, the Eastern District of California found petitioner entitled to prospective equitable tolling due to the impact of the COVID-19 pandemic. 482 F.Supp.3d 1049, 1060 (E.D. Cal. 2020). The court disagreed with respondents that *Smith*, in essence, had removed such tolling from "all cases." *Id*. at 1056. The court noted that the Supreme

1   Court had not barred such tolling and that the Ninth Circuit had allowed it since *Beeler*. *Id*.
2   at 1056–57 (citing cases). In fact, the court stressed that *Smith* did not even discuss
3   prospective equitable tolling, as Smith had filed his federal petition two months after the
4   statute of limitations had run. *Id*. at 1057 (citing *Smith*, 953 F.3d at 587). The court reasoned
5   that the Ninth Circuit had only "rejected [Smith]'s retrospective 'stop-clock' argument"
6   because he "had simply failed to show" diligence "before, during, and after he had obtained
7   the state court record." *Id*. (citing *Smith*, 953 F.3d at 601–02).

Thus, even though Brown had not filed his petition, the court determined that *Smith* did "not prohibit prospective equitable tolling . . . where petitioner's counsel has both demonstrated and committed to the continued exercise of due diligence." *Id*. Though the court acknowledged that "some conceivable tension between the decisions in *Beeler* and *Smith*" may exist, this alone would not suffice to conclude that *Smith* "implicitly overruled" *Beeler*. *Id*. at 1058 (citing *Aleman Gonzalez v. Barr*, 955 F.3d 762, 768–69 (9th Cir. 2020), *cert. granted in Garland v. Gonzalez*, 142 S. Ct. 919 (Mem) (Aug. 23 2021); *United States v. Walker*, 953 F.3d 577, 581 (9th Cir. 2020)).

The District of Nevada also granted prospective equitable tolling based on the pandemic in *Mullner v. Williams*, No. 2:20-cv-00535-JAD-BNW, 2020 WL 6435751, at *2 (D. Nev. Nov. 2, 2020). The court recognized that such tolling departed "from the usual practice" and that "[b]y its nature, equitable tolling is a retrospective equitable remedy." *Id.* at *1. The court also noted that in the event of "a short deadline," the Federal Public Defender would usually quickly file a timely petition, "effectively a rough draft based upon a brief initial investigation, to which later amended petitions can relate back." *Id*. The court, however, found this practice unnecessary based on the record:

> The extraordinary circumstance of the COVID-19 pandemic is ongoing, and the court agrees that it prevents Mullner from filing a timely amended petition. This is because if the court were to deny prospective equitable tolling but give Mullner additional time to file an amended petition because of the challenges he faces, then the court can say with certainty that it would find equitable tolling to be warranted once he files the amended petition. Thus, the court will simply grant equitable tolling now. . . .

- 7 -

*Id.* at *4.

This Court, however, is bound by the holdings in *Beeler* and *Smith*. The Ninth Circuit in *Beeler* did not directly address whether prospective tolling was permissible; rather, the court assessed whether the statute of limitations was subject to equitable tolling or was an inflexible limitation on federal court jurisdiction. *See* 128 F.3d at 1285. Having decided that the statute of limitations could be tolled, the Ninth Circuit affirmed the district court's decision to allow Beeler more time to file his petition after his first attorney withdrew from representation. *Id.* at 1289. But it is not evident from the opinion that the district court's decision to toll in that particular context—in contrast to its legal authority to toll—was even at issue on appeal. *See Beeler*, 128 F.3d 1283.

The Court has concerns that, in light of *Smith*, granting Burns's request for prospective equitable tolling may negatively impact some of his claims. *See Mardesich v. Cate*, 668 F.3d 1164, 1171 (9th Cir. 2012) ("AEDPA's one-year statute of limitations in § 2244(d)(1) applies to each claim in a habeas application on an individual basis."). A blanket authorization of equitable tolling for a pre-determined period of time, if later determined to have been granted in error, could result in the loss of some of Burns's claims. The Court shares the opinion of Judge Edmund A. Sargus, Jr., of the Southern District of Ohio: "The novelty of the issue presented herein militates in favor of taking the more cautious approach for which the Court has opted." *Pickens v. Shoop*, No. 19-cv-558, 2020 WL 3128536, at *3 (S.D. Ohio June 12, 2020).

To conclude, neither the Supreme Court nor the Ninth Circuit has directly addressed the availability of prospective equitable tolling of federal habeas petitions. *Beeler* simply stands for the proposition that the AEDPA is subject to equitable tolling. The Ninth Circuit in *Smith*, however, has instructed this Court to examine a petitioner's diligence "up to the time of filing his claim in federal court." *Smith*, 953 F.3d at 598–99. This the Court cannot do until a petition is filed. Thus, the request for prospective equitable tolling is denied as premature.

Instead, the Court will adopt the approach taken in *Pickens*, and grant Burns's

1  request to file an amended petition by September 18, 2022, to protect the interests and
2  rights of both parties.
3        Respondents have consented to the filing of an amended petition 90 days after the
4  petition is filed. (Doc. 19.)
5        Accordingly,
6        **IT IS ORDERED denying** Burns's motion for equitable tolling (Doc. 16) **without**
7  **prejudice**.
8        **IT FURTHER ORDERED:**
9        1. The deadline for filing the initial habeas petition remains **June 20, 2022**.
10       2. The deadline for filing an amended habeas petition is **September 18, 2022**.
11       3. The parties shall confer and submit a joint proposal for the remaining deadlines
12 no later than **May 19, 2022**.
13       Dated this 16th day of May, 2022.

                                                Honorable Steven P. Logan
                                                United States District Judge